# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 15-1241V
**Filed: January 4, 2019**
PUBLISHED

|  |  |
|---|---|
| JAMES YOUNG, <br><br>                   Petitioner, <br> v. <br><br> SECRETARY OF HEALTH AND <br> HUMAN SERVICES, <br><br>                   Respondent. | Ruling; Pain and Suffering Damages; Influenza ("Flu") Vaccine; Shoulder Injury Related to Vaccine Administration ("SIRVA"); Out-of-Pocket Expenses; Future Medical Expenses. |

*Edward M. Kraus, Law Offices of Chicago Kent, Chicago, IL, for petitioner.*
*Robert Paul Coleman, III, U.S. Department of Justice, Washington, DC, for respondent.*

## RULING ON PAIN AND SUFFERING DAMAGES AND OUT-OF-POCKET EXPENSES[1]

**Dorsey**, Chief Special Master:

On October 23, 2015, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered from a left shoulder injury as a result of receiving an influenza

---

[1] The undersigned intends to post this Ruling on the United States Court of Federal Claims' website. **This means the Ruling will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished Ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

("flu") vaccination on October 24, 2013.[3]  Petition at 1, 4.  The case was initially assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.  When the parties were unable to resolve damages, the case was transferred to the undersigned's non-SPU docket.

On January 10, 2018, the undersigned issued a ruling on entitlement, finding petitioner entitled to compensation for his shoulder injury related to vaccine administration ("SIRVA"). The only issues remaining before the undersigned are the amount of damages that petitioner should be awarded in compensation for (1) past and future pain and suffering, (2) out-of-pocket expenses, and (3) future physical therapy costs.  For the reasons described below, the undersigned finds that petitioner is entitled to an award of damages in the amount of $100,000.00 for pain and suffering and $2,293.15 for out-of-pocket expenses.  The undersigned requires additional evidence to issue a ruling on future physical therapy costs.

## I.       Procedural History

Most of the relevant procedural history was set forth in the Ruling on Entitlement and will not be repeated here.  *See* Ruling dated Jan. 10, 2018 (ECF No. 48).  After the Ruling on Entitlement was issued, petitioner filed updated medical records, as well as documents relevant to petitioner's out-of-pocket expenses, and the parties attempted to informally resolve damages. The parties were unable to do so, and a damages hearing was held on September 25, 2018, in Washington, D.C.  Prior to that hearing, the parties filed submissions setting forth their respective positions.  Respondent's Pre-Hearing Memorandum ("Resp. Memo") (ECF No. 64); Petitioner's Pre-Hearing Memorandum ("Pet. Memo") (ECF No. 65).  After the hearing, petitioner also filed a letter from his physical therapist.  Pet. Ex. 21.  On November 20, 2018, petitioner filed a status report stating that the parties had been unable to resolve damages and requesting that the Court issue a decision.

This case is now ripe for a determination concerning petitioner's damages related to out-of-pocket medical expenses and actual and future pain and suffering.

## II.      Factual History

Petitioner's medical history was previously discussed in the Ruling on Entitlement and will not be repeated here.  As relates to the facts that more specifically support petitioner's claim for damages, petitioner provides a detailed medical history in his Pre-Hearing Memorandum, filed August 24, 2018.  *See* Pet. Memo at 2-9.  After reviewing the medical records and other evidence, the undersigned finds the factual background in petitioner's memorandum to be accurate, and she incorporates it herein by reference.

## III.     Testimony of Petitioner

Dr. Young is a physician who lives in Rome, Georgia, where he volunteers as an instructor for medical residents and assists the local hospital with issues related to nursing organization.  Tr. 6-8.  On October 24, 2013, he received an influenza vaccine in his left arm. Pet. Ex. 12; Tr. 10.  After receiving the vaccine, he experienced aching pain that was exacerbated

---

[3] Petitioner originally claimed that he received the flu vaccine in November 2013.  *See* Petition at 1.  However, after additional investigation by his attorney, petitioner discovered and does not dispute that he received the flu vaccine on October 24, 2013.  *See* Status Report dated Mar. 9, 2016 (ECF No. 16); Petitioner's Exhibit ("Pet. Ex.") 12.

by movement.  Tr. 11.  He self-treated with Motrin, Aleve, and steroids, and to avoid pain, he limited the use of his left arm.  Tr. 11-14.

In March 2014, almost five months after vaccination, Dr. Young sought outside medical treatment because his condition was not improving.  Tr. 16.  On March 24, 2014, he saw nurse practitioner Martha Greishaw,[4] who referred him to an orthopedic surgeon.  Pet. Ex. 3 at 1.  On the date of his visit with Ms. Greishaw, Dr. Young reported that his pain level was a ten out of ten.  *Id.*  Dr. Young testified that at that point, he was "at the end of [his] chain."  Tr. 17.

Subsequently, Dr. Young saw Dr. Ikard, an orthopedic surgeon, who made the diagnosis of adhesive capsulitis and administered a steroid injection.  Tr. 18-19.  Dr. Ikard also prescribed physical therapy (PT).  Tr. 19-20.  At Dr. Young's initial PT evaluation in April 2014, he was assessed with a 45% shoulder disability impairment.  Pet. Ex. 14 at 3.  His pain level at rest was three out of ten, but pain with movement was a ten out of ten.  Pet. Ex. 4 at 19.  Dr. Young explained that if he did not move his arm, the pain was bearable, but when he moved, the pain was in the "upper range" of the pain scale.  Tr. 47.  Physical therapy was painful and difficult, and Dr. Young thought perhaps that he "let it be more painful that [he] should have because . . . at some point [he] had to get [his] shoulder working again."  Tr. 21.  To illustrate the degree of pain he experienced, Dr. Young testified that there were times when he thought "it would hurt less if [he] cut [his] arm off."  Tr. 48.

At a follow-up visit with Dr. Ikard's physician assistant in June 2014, Dr. Young reported that he was "100 percent better."  Tr. 22.  His arm was much more functional – he could shower and wash under his arm, and he could throw a towel over his back to dry off instead of lying on a towel to dry off.  *Id.*

Dr. Young discontinued formal physical therapy in June 2014, but continued home exercises for his shoulder twice weekly, and continued to stretch to maintain the strength of his rotator cuff.  Tr. 23.  In the fall of 2014, Dr. Young's baseline condition was "pretty good" but if he was active or exercised, he would have days where his condition worsened, followed by a return to his chronic level of pain and function.  Tr. 23.

In October 2014, Dr. Young received the FluMist vaccine.[5]  Within days he experienced a recurrence or exacerbation of left shoulder pain.  Tr. 24.  He also had right shoulder pain.  *Id.* Dr. Young continued to have ongoing problems with reduced range of motion and loss of strength.  Tr. 26.  He lost muscle mass and experienced fatigue, pain, and weakness of his left shoulder.  *Id.*  In February 2017, due to these ongoing problems, he returned to PT.  Tr. 26-27.

On February 7, 2017, Dr. Young had a PT evaluation.  Pet. Ex. 14 at 1.  The physical therapist documented that Dr. Young had left shoulder pain and dysfunction from adhesive capsulitis with decreased range of motion, weakness, and limitations with reaching, carrying, pushing, and pulling.  *Id.*  He also had limitations with "self-care activities, ADLs [activities of daily living], housework, yard work activities, and workout function."  *Id.*  Dr. Young began attending physical therapy every other week, and then monthly.  Tr. 30.  He exhausted his health

---

[4] Although the nurse practitioner was referred to as Jackie Grimshaw during the hearing, the medical records from this visit list her name as Martha Greishaw.  *See* Tr. 16; Pet. Ex. 3 at 3.

[5] Dr. Young testified that he took FluMist (which is administered nasally) instead of the shot to eliminate the "mechanical risk" of the flu shot being administered in the arm.  Tr. 24.

care benefits for PT but after negotiating a self-pay plan, he continued to attend on a monthly basis. Tr. 30-31. His range of motion improved and he was able to perform weight bearing exercises. Tr. 31. Dr. Young continues to attend PT on a monthly basis. Tr. 30. He summarized his continued reliance on PT as follows: "I don't know if anybody would send me to physical therapy today, but I feel better going and getting checked once a month." Tr. 32. He does not want to regress or lose his function. *Id.* Dr. Young characterizes his current condition as chronic but stable. *Id.*

As a result of his shoulder injury, Dr. Young has given up some of his outdoor sports, including biking and kayaking. Tr. 40-41. He continues to trail run and workout in a gym. Tr. 42. In addition to his monthly PT appointments, he also continues to exercise and stretch his shoulder two to three times weekly. Tr. 42-43.

Dr. Young testified that his copays for PT total $2,043.15, and he has paid $250.00 for PT under the self-pay plan. Pet. Ex. 19 at 3; Tr. 33-35. He anticipates that he will continue to pay $50.00 per month going forward into the future for PT. Tr. 35. No physician has recommended that Dr. Young continue PT as an ongoing treatment to maintain his function and prevent reoccurrence of his frozen shoulder. Tr. 51. However, he continues PT because he does not want to regress or lose his current function. Tr. 51-52.

## IV.     Letter by Jeff Giddens, PT, MPT, CSCS

After the hearing, Dr. Young filed a letter from his physical therapist, Jeff Giddens, summarizing his care and treatment of Dr. Young from February 7, 2017, to present. *See* Pet. Ex. 21. Mr. Giddens confirms that Dr. Young presented with shoulder pain and adhesive capsulitis, and with treatment had improved range of motion and strength which has allowed him to return to many of his prior activities. *Id.* at 1. In pertinent part, Mr. Giddens states the following:

> Dr. Young's therapy utilization has been outside the typical protocol for his shoulders, but his ROM [range of motion] and function continued to progress and maintain with continued physical therapy services and continued to decrease without physical therapy services. Dr. Young has continued physical therapy services on a maintenance program which involves physical therapy services one time per month for continued stretching and maintaining functional ROM on bilateral shoulders. It was medically necessary for Dr. Young to receive the physical therapy interventions he has received. Dr. Young continues his monthly maintenance program one time per month on a self-pay basis.

*Id.*

4

### V.      Contentions of the Parties

In his Pre-Hearing Memorandum, Dr. Young asserts that he has suffered a significant left shoulder injury for almost five years, and he seeks $110,000.00 for pain and suffering damages, $2,293.15 for out-of-pocket expenses, and $10,000.00 for future medical expenses.  Pet. Memo at 9, 15; Pet. Ex. 19 at 3.

Respondent proposes a pain and suffering award of $30,000.00, plus unreimbursed medical expenses related to Dr. Young's left shoulder physical therapy in 2014.  Resp. Memo at 6.  Respondent maintains that "although petitioner asserts that a FluMist vaccination administered to him on September 9, 2014, caused right shoulder pain and an aggravation of his left shoulder pain, petitioner is not claiming a right shoulder injury under the Vaccine Act, and no treating doctor has offered an opinion as to whether his left shoulder pain related to both this FluMist vaccination and the October 24, 2013 intramuscular influenza vaccination."  Resp. Memo at 4.  For these reasons, respondent believes his proposal of $30,000.00 for pain and suffering is reasonable.  *Id.*

As for unreimbursable expenses, respondent contends that although petitioner had PT in 2017 and 2018, that treatment also included therapy for other joints (knee and right shoulder), and thus, respondent argues that petitioner cannot recover for those out-of-pocket expenses.  Resp. Memo at 4.  Respondent did not state a position on petitioner's request for an award of $10,000.00 for future physical therapy costs.

### VI.     Discussion

### A.      Pain and Suffering Legal Standard

Compensation awarded pursuant to the Vaccine Act shall cover "actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." § 300aa-15(a)(4).  Petitioner bears the burden of proof with respect to each element of compensation requested.  *Brewer v. Sec'y of Health & Human Servs.*, No. 93-92V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).  Medical records are the most reliable evidence regarding a petitioner's medical condition and the effect it has on her daily life. *Shapiro v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 532, 537-38 (2011) ("There is little doubt that the decisional law in the vaccine area favors medical records created contemporaneously with the events they describe over subsequent recollections.").

There is no formula for assigning a monetary value to a person's pain and suffering and emotional distress.  *See I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (*originally issued* Apr. 19, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula."); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("[T]he assessment of pain and suffering is inherently a subjective evaluation.").  In determining an award in this case, the undersigned does not rely on a single decision or case.  Rather, the undersigned has reviewed the particular facts and circumstances in this case, giving due consideration to the circumstances and damages in other cases cited by the parties and other relevant cases, as well as her knowledge and experience adjudicating similar cases.

In determining an award for pain and suffering and emotional distress, it is appropriate to consider the severity of the injury and awareness and duration of suffering. *See I.D.*, 2013 WL 2448125, at \*9-10 (citing *McAllister v. Sec'y of Health & Human Servs.*, No. 91-1037V, 1993 WL 777030 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).  In evaluating these factors, the undersigned has reviewed the entire record, including medical records, affidavits submitted by petitioner and others, and hearing testimony.

The undersigned may also look to prior pain and suffering awards to aid in her resolution of the appropriate amount of compensation for pain and suffering this case. *See, e.g., Jane Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case"). And, of course, the undersigned also may rely on her own experience adjudicating similar claims. *See Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).  Pain and suffering is not determined based on a continuum. *See generally Graves v. Sec'y of Health & Human Servs.,* 109 Fed. Cl. 579 (2013).

## C.  Prior SIRVA Pain and Suffering Decisions

SIRVA cases have an extensive history of informal resolution within the Vaccine Program over the past few years.  As of July 1, 2018, 864 SIRVA cases have informally resolved within SPU since its inception in July 2014.  Of those cases, 541 have been resolved via the government's proffer on award of compensation, following a prior ruling that petitioner is entitled to compensation.[6]  Additionally, 309 SPU SIRVA cases have been resolved via stipulated agreement of the parties without a prior ruling on entitlement.

Among the SPU SIRVA cases resolved via government proffer, awards have typically ranged from $77,500.00 to $125,000.00.[7]  The median award is $100,000.00.  In most instances, these awards are presented by the parties as a total agreed-upon dollar figure without separately listed amounts for expenses, lost wages, or pain and suffering.

---

[6] Additionally, there have been 14 prior cases in which petitioner was found to be entitled to compensation, but where damages were resolved via a stipulated agreement by the parties rather than government proffer.

[7] Typical range refers to awards between the second and third quartiles.  Additional outlier awards also exist.  The full range of awards spans from $25,000.00 to $1,845,047.00.  Among the 14 SPU SIRVA cases resolved via stipulation following a finding of entitlement, awards range from $45,000.00 to $1,500,000.00, with a median award of $122,886.40.  For these awards, the second and third quartiles range from $89,250.00 to $162,876.80.

Among SPU SIRVA cases resolved via stipulation, awards have typically ranged from $50,000.00 to $95,228.00.[8]  The median award is $71,355.26.  As with proffered cases, in most instances, stipulated awards are presented by the parties as a total agreed upon dollar figure without separately listed amounts for expenses, lost wages, or pain and suffering.  Unlike the proffered awards, which purportedly represent full compensation for all of petitioner's damages, stipulated awards also typically represent some degree of litigative risk negotiated by the parties.

Additionally, there have been several reasoned decisions by the undersigned awarding damages in SIRVA cases where the parties were unable to informally resolve damages.  Typically, the primary point of dispute has been the appropriate compensation for pain and suffering.  These decisions are:

- *Desrosiers v. Sec'y Health & Human Servs.*, No. 16-224V, 2017 WL 5507804 (Fed. Cl. Spec. Mstr. Sept. 19, 2017) (awarding $85,000.00 for pain and suffering and $336.20 for unreimbursable medical expenses);

- *Dhanoa v. Sec'y Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) (awarding $94,900.99 for pain and suffering and $862.14 for unreimbursable medical expenses);

- *Marino v. Sec'y Health & Human Servs.*, No. 16-622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018) (awarding $75,000.00 for pain and suffering and $88.88 for unreimbursable medical expenses);

- *Knauss v. Sec'y Health & Human Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for pain and suffering and $170.00 for unreimbursable medical expenses);

- *Collado v. Sec'y Health & Human Servs.*, No. 17-225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) (awarding $120,000.00 for pain and suffering and $772.53 for unreimbursable medical expenses); and

- *Kim v. Sec'y Health & Human Servs.*, No. 17-418V, 2018 U.S. Claims LEXIS 919 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $75,000.00 for pain and suffering and $520.00 for unreimbursable expenses).

## D.  Amount to be Awarded for Pain and Suffering in this Case

Based upon the record as a whole, the undersigned finds that the facts and circumstances in this case warrant an award of $100,000.00 for actual pain and suffering.  The case law directs the undersigned to consider the severity of injury and awareness and duration of suffering to determine the amount of a pain and suffering award.  In this case, neither party has raised, nor is the undersigned aware of, any issue concerning petitioner's awareness of suffering and she finds

---

[8] Typical range refers to awards between the second and third quartiles.  As with the cases resolved by government proffer, additional outlier awards also exist.  The full range of awards spans from $5,000.00 to $509,552.31.  Additionally, two stipulated awards were limited to annuities, the exact amounts of which were not determined at the time of judgment.

that this matter is not in dispute.  Thus, based on the circumstances of this case, the undersigned determines that petitioner had full awareness of his suffering.

As for severity of the injury, Dr. Young's medical records and his testimony establish that he suffered a moderately severe shoulder injury diagnosed as adhesive capsulitis.  Due to severe pain caused by movement, he stopped using his left arm and put his left hand in his pocket to avoid moving his arm.  In March 2014, his pain was severe, rated ten out of ten.  He had asymmetry of his shoulders, muscle atrophy, and decreased range of motion.  He also had positive impingement testing and significant functional limitations, as described in detail in PT records.  Dr. Young had difficulties with activities of daily living, and he was noted to have a 45% disability impairment rating of his left shoulder.  While Dr. Young improved with physical therapy, he had a recurrence of his symptoms in the fall of 2014.  Ultimately, in 2017, he returned to physical therapy and was again assessed with adhesive capsulitis.  In total, he has attended over 50 PT sessions.  The need for this degree of therapy speaks to the severity his injury.  When he returned to therapy in 2017, he had abnormalities of his range of motion, shoulder atrophy, and issues with strength.  He has given up outdoor sports, including biking and kayaking.

Dr. Young's testimony as to the pain caused by his injury, as well as the pain he had during therapy to treat the injury, was compelling.  When describing his pain, his demeanor was stoic and he was understated.  However, it was clear that he suffered severe pain during the acute phase of his condition and during the PT treatment and stretching required to regain function.

Mr. Giddens' letter also provides evidence of the severity of Dr. Young's injury.   Mr. Giddens explains that Dr. Young presented in 2017 with pain and limited functional ability significant enough to require lengthy and ongoing PT treatment.  It is noteworthy that Mr. Giddens describes Dr. Young as atypical ("outside the typical protocol") in that he requires ongoing therapy.  Without maintenance PT, Dr. Young's range of motion decreases and he loses function.  Thus, he has required and continues to require monthly therapy and stretching to maintain his current level of function.

In addition to considering the severity of the pain and physical limitations caused by his injury, the undersigned has also considered the duration of petitioner's suffering.  Dr. Young experienced significant pain for at least six months, from the date of vaccination until late spring 2014.  He suffered a recurrence of his symptoms in the fall of 2014, which led him back to PT.  He has been in PT since February 2017 and continues to attend monthly.  Although petitioner has not required surgery, his case is atypical in that the duration of his condition is longer that the usual SIRVA case, and he has required ongoing PT to prevent a decrease in his functional ability.

Petitioner cites several similar SIRVA cases that support his position.  In *Desrosiers*, petitioner was awarded $85,000.00 for pain and suffering.  2017 WL 5507804, at *1-4.  There, petitioner's most severe symptoms lasted seven months, and overall, her symptoms persisted for about two and a half years.  *Id.* at 5.  Here, Dr. Young's most severe symptoms lasted approximately six months, but he suffered an exacerbation of those symptoms, and overall, he had symptoms for about five years, warranting a larger award.  And in *Dhanoa*, the petitioner was awarded $94,900.99, which included $85,000.00 for actual pain and suffering and $10,000.00 for future pain and suffering (reduced to $9,900.99).  2018 WL 1221922, at *7.

There, the petitioner had treatment for over three years.  *Id.* at 6.  Dr. Young's symptoms persisted longer.

Respondent asserts that because Dr. Young claims that the FluMist vaccine administered in October 2014 aggravated his left shoulder pain, and no physician has opined that petitioner's left shoulder pain was caused by both vaccines, that $30,000 is a reasonable award for pain and suffering.  Resp. Mot. at 4.  The preponderance of the evidence, however, establishes that in the fall of 2014, before Dr. Young received his FluMist vaccine, his condition was chronic, and when he participated in sports or exercise, he would have periods of pain.  In October 2014, he had recurrence of pain, requiring physical therapy that he has continued to this day.[9]  Tr. 24, 30.

Based on knowledge and experience gained from reviewing hundreds of SIRVA cases, medical and physical therapy records, and hearing testimony from petitioners, the undersigned has learned that there is a wide range of severity and duration in pain and functional limitation in shoulder injury cases.  Some petitioners experience a complete resolution of pain and a full return to their prior functional ability, but others have a lengthy clinical course.  And others have a clinical course notable for a recurrence or aggravation of their initial injury, requiring additional and perhaps lengthy treatment to return to baseline functional ability.  Dr. Young's clinical course is an example of the latter.

Respondent cites several cases in support of their recommended award, including *H.S.*, a syncope case, where the pain and suffering award was $60,000.00.  Resp. Mot. at 4 (citing *H.S. v. Sec'y of Health & Human Servs.*, No. 14-1057V, 2015 WL 6155891 (Fed. Cl. Spec. Mstr. Sept. 25, 2015)).  In *H.S.*, the petitioner did have a very serious injury.  He fainted after vaccination and fractured his skull and a vertebra in his neck.  *H.S.*, 2015 WL 6155891, at \*1.  He required an overnight admission to the hospital.  *Id.* at 2.  He also wore a hard neck collar for six weeks, and he was restricted from sports for nine months and full activity for one year.  *Id.*  While his injury was severe, the duration of pain and limited functional ability was one year, as compared to five years here.  The underlying facts of *H.S.* are not sufficiently similar to provide persuasive value in this case.

A list of conceded SIRVA cases with lower awards is cited by respondent, but without more factual information, the numbers do not provide a meaningful comparison and thus, do not provide persuasive value.

### E.      Amount to be Awarded for Out-of-Pocket Expenses

Next, the parties request that the undersigned decide an award for out-of-pocket expenses.  Pursuant to the Vaccine Act, petitioner is entitled to compensation for "actual unreimbursable expenses" for his vaccine-related injury which have been incurred for "medical or other remedial care determined to be reasonably necessary."  § 300aa-15(a)(1)(A).  Dr. Young

---

[9] In deciding this point, the undersigned specifically does not find that petitioner's FluMist vaccine caused any injury.  Instead, she finds that petitioner experienced a recurrence or aggravation of his underlying SIRVA injury, related to his flu vaccine administered October 24, 2013.  As for petitioner's claim of right shoulder pain, petitioner has not stated a claim for compensation for that condition, and to be clear, the undersigned does not award any damages for petitioner's right shoulder condition.

seeks $2,043.15 for past PT co-pays for 2018 and $250.00 for past PT he paid under the self-pay arrangement he has with his physical therapist for those sessions that were not paid by insurance after he exhausted his insurance benefits.  <u>See</u> Pet. Ex. 19 at 1-3; Tr. 33-35.  Thus, his past unreimbursable expenses total $2,293.15.

Respondent asserts that petitioner's PT since 2017 also covers petitioner's right knee, which is not part of his vaccine claim, and is therefore not recoverable.  Resp. Memo at 4.  As such, respondent proposes that petitioner only be awarded unreimbursable expenses related to left shoulder PT in 2014.[10]  *Id.*  Respondent does not provide any evidence or method by which to apportion PT costs based on the cost associated with petitioner's left shoulder as compared to his right shoulder or knee.

Where no apportionment is possible, the program must compensate the petitioner for the entire cost.  *See Spence v. Sec'y of Health & Human Servs.*, No. 95-57V, 2001 WL 99893 (Fed. Cl. Spec. Mstr. Jan. 3, 2001).  Thus, the undersigned awards the amount requested, for a total of $2,293.15.

### F.      Future Physical Therapy Costs

Lastly, petitioner seeks $10,000.00 for future physical therapy treatment.  The undersigned has separately ordered petitioner to provide the Court with additional information regarding his health insurance policy and the degree to which it may cover these treatments.  Once petitioner has provided this information, the undersigned will issue a decision regarding future physical therapy costs.

### VII.    Conclusion

For all the reasons described above, and based on consideration of the record as a whole, the undersigned finds that $100,000.00 represents a fair and appropriate amount of compensation for petitioner's pain and suffering.  The undersigned further finds that petitioner is entitled to $2,293.15 for past unreimbursable medical expenses.

A damages decision will issue once additional information is provided as to petitioner's future physical therapy costs.

**IT IS SO ORDERED.**

<u>**s/Nora Beth Dorsey**</u>
Nora Beth Dorsey
Chief Special Master

---

[10] Petitioner did not submit any evidence of costs related to his PT in 2014.